## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TODD HANDY, | : |
| | : |
| Plaintiff, | : CIVIL ACTION NO. |
| | : |
| v. | : |
| | : |
| HENRY AVENUE OPERATING | : PLAINTIFF REQUESTS TRIAL BY JURY |
| COMPANY, LP d/b/a PEDIATRIC | : |
| SPECIALTY CARE AT PHILADELPHIA; | : |
| SUZANNE THORNTON (individually); | : |
| JENNIFER HASSE (individually); | : |
| BEN BIA (individually); | : |
| KENNETH MOLCZAN (individually); | : |
| AND ALISON GREEN (individually), | : |
| | : |
| Defendants. | : |
| | : |
| | : |

## COMPLAINT

PLAINTIFF, TODD HANDY, by and through undersigned counsel hereby files this Civil

Action Complaint against Defendants HENRY AVENUE OPERATING COMPANY, LP d/b/a

PEDIATRIC SPECIALTY CARE AT PHILADELPHIA; SUZANNE THORNTON

(individually); JENNIFER HASSE (individually); BEN BIA (individually); KENNETH

MOLCZAN (individually); and ALISON GREEN (individually) (hereinafter collectively referred

to as "Defendants") and avers the following:

## PARTIES

1.      PLAINTIFF, Todd Handy, (hereinafter also referred to as "PLAINTIFF") is an

African American male who resides in the State of New Jersey with an address for purposes of

correspondence at 159 Delaware Street, Apt 2B, Woodbury, NJ 08096.  At all times relevant

herein, PLAINTIFF worked in the Commonwealth of Pennsylvania.

2.      At all times material, Defendant, HENRY AVENUE OPERATING COMPANY, LP d/b/a PEDIATRIC SPECIALTY CARE, (hereinafter also referred to as "DEFENDANT PSC"), was and still is a miscellaneous corporation organized and existing by virtue of the laws of the Commonwealth of Pennsylvania with its principal place of business located at 3301 Scotts Lane, 4th Floor, Philadelphia, PA 19129.

3.      Defendant, SUZANNE THORNTON (hereinafter also referred to as "Defendant THORNTON") is an adult individual who resides in the Commonwealth of Pennsylvania with a business address for the purposes of service at 3301 Scotts Lane, 4th Floor, Philadelphia, PA 19129.

4.      At all material times, Defendant THORNTON was the Regional Director of Human Resources and as a supervisor subjected PLAINTIFF to discrimination, harassment, hostile work environment, and retaliation for PLAINTIFF's opposition to and reporting of the discrimination and harassment in the workplace.  Defendant THORNTON is a Caucasian female.

5.      Defendant, JENNIFER HASSE (hereinafter also referred to as "Defendant HASSE") is an adult individual who resides in the Commonwealth of Pennsylvania with a business address for the purposes of service at 3301 Scotts Lane, 4th Floor, Philadelphia, PA 19129.

6.      At all material times, Defendant HASSE was the Director of Human Resources Operation and as a supervisor subjected PLAINTIFF to discrimination, harassment, hostile work environment, and retaliation for PLAINTIFF's opposition to and reporting of the discrimination and harassment in the workplace.  Defendant HASSE is a Caucasian female.

7.      Defendant, BEN BIA (hereinafter also referred to as "Defendant BIA") is an adult individual who resides in the Commonwealth of Pennsylvania with a business address for the purposes of service at 3301 Scotts Lane, 4th Floor, Philadelphia, PA 19129.

8.　At all material times, Defendant BIA was the Vice President of Human Resources Operations.  As a supervisor, Defendant BIA subjected PLAINTIFF to discrimination, harassment, hostile work environment, and retaliation for PLAINTIFF'S opposition to and reporting of the discrimination and harassment in the workplace.  Defendant BIA is a Caucasian male.

9.　Defendant, KENNETH MOLCZAN (hereinafter also referred to as "Defendant MOLCZAN") is an adult individual who resides in the Commonwealth of Pennsylvania with a business address for the purposes of service at 3301 Scotts Lane, 4th Floor, Philadelphia, PA 19129.

10.　At all material times, Defendant MOLCZAN was the Administrator and as a supervisor subjected PLAINTIFF to discrimination, harassment, hostile work environment, and retaliation for PLAINTIFF's opposition to and reporting of the discrimination and harassment in the workplace.  Defendant MOLCZAN is a Caucasian male.

11.　Defendant, ALISON GREEN (hereinafter also referred to as "Defendant GREEN") is an adult individual who resides in the Commonwealth of Pennsylvania with a business address for the purposes of service at 3301 Scotts Lane, 4th Floor, Philadelphia, PA 19129.

12.　At all material times, Defendant GREEN was the Director of Nursing and as a supervisor subjected PLAINTIFF to discrimination, harassment, hostile work environment, and retaliation for PLAINTIFF'S opposition to and reporting of the discrimination and harassment in the workplace.  Defendant GREEN is a Caucasian female.

13.　At all times relevant to this civil action Defendants were PLAINTIFF'S joint and sole employer.

**NATURE OF THE CASE**

14.     PLAINTIFF complains pursuant to Section 1981; Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 20003-17 (amended in 1972, 1978, by the Civil Rights Act of 1991, Pub. L. No. 102-166) ("Title VII"), 42 U.S.C. § 2000e, et seq.; Family and Medical Leave Act of 1993, 29 U.S.C. §§ 2601 et seq. ("FMLA"); the Family First Coronavirus Response Act ("FFCRA") the Pennsylvania Human Relations Act, as amended, 43 P.S. §§ 951, *et. seq.* ("PHRA"); as well as the Philadelphia Fair Practices Ordinance ("PFPO"); under the laws of the Commonwealth and seeks damages to redress injuries PLAINTIFF suffered as a result of Defendants' discrimination, harassment, retaliation and the hostile work environment which ultimately led to PLAINTIFF'S unlawful termination from PLAINTIFF'S employment for Defendants.

**JURISDICTION AND VENUE**

15.     This action involves a Question of Federal Law under 28 U.S.C. § 1331, Section 1981, Title VII of the Civil Rights Act of 1964, the Family and Medical Leave Act of 1993, 29 U.S.C. §§ 2601 et seq. ("FMLA"), Family First Coronavirus Response Act ("FFCRA").  The honorable Court also has supplemental jurisdiction over the Causes of Action.

16.     Venue is proper in the Eastern District of Pennsylvania as PLAINTIFF was employed by Defendants and worked in Philadelphia County, Pennsylvania where the discrimination, harassment and hostile work environment complained of occurred.

17.     On or around December 23, 2020, PLAINTIFF filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") against Defendants as set forth herein.  PLAINTIFF'S Charge of Discrimination was dual filed with the Pennsylvania Human Relations Commission ("PHRC").

18.     On or about June 4, 2021, the EEOC sent a Dismissal and Notice of Rights to PLAINTIFF by electronic mail.

19.     This action is hereby commenced within ninety (90) days of receipt of the Dismissal and Notice of Rights.

20.     PLAINTIFF's PHRA claims are still pending before PHRC because less than one year has elapsed since PLAINTIFF filed his PHRA claims.

21.     After the one year waiting period has elapsed on PLAINTIFF's PHRA claims, PLAINTIFF will amend his complaint to assert the newly ripened causes of action under the PHRA against the parties referenced above. See Fed. R. Civ. P. 15(a) (Courts "freely give leave to amend when justice so requires"), 15(c) (Amendments "relate back" to the date of the original pleading), and 15(d) (Plaintiffs may "serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented").

## **MATERIAL FACTS**

22.     On or about October 31, 2018, PLAINTIFF was hired by Defendant PSC as a Human Resources Coordinator.

23.     Throughout PLAINTIFF'S employment, he performed his job functions in a dutiful manner, and maintained a satisfactory work performance.

24.     From the beginning of PLAINTIFF'S employment, Defendants subjected him and other African American employees to pervasive discrimination and harassment in the workplace due to their race and/or color.

25.     As the Human Resources Coordinator, part of PLAINTIFF'S duties included, but not limited to, listening, and addressing personnel complaints.

26.    On numerous occasions, African American employees complained to PLAINTIFF of Defendant GREEN'S conduct and disparate treatment.

27.    Specifically, African American employees complained that Defendant GREEN offered Caucasian and Latino employees preferential work assignments, opportunities to alter their schedules, and approved requests for overtime hours, but would not do so for the similarly situated African American employees.  Darker skinned African American employees also made similar complaints that Defendant GREEN intentionally favored employees with lighter complexions.

28.    Further, Defendant GREEN would refuse to give write ups to Caucasian and Latino employees for attendance violations but would immediately and consistently give write ups to African American employees.  Darker skinned African American employees also made similar complaints that Defendant GREEN intentionally favored employees with lighter complexions.

29.    PLAINTIFF addressed the complaints of race and color discrimination of the employees to Defendant MOLCZAN.

30.    PLAINTIFF raised complaints of several African American employees regarding Defendant GREEN'S conduct to Defendant MOLCZAN'S in his capacity as Human Resources, but nothing was done

31.    Upon information and belief, employees by-passed PLAINTIFF and raised the same or similar complaints directly to Defendant MOLCZAN, but still nothing was done.

32.    Defendant GREEN would also make discriminatory comments toward African Americans.

33.    In or around May of 2020, Defendant GREEN referred to PLAINTIFF as the "black plague" and "blurple".  PLAINTIFF immediately informed Defendant GREEN that her comment was racist and that he had grounds to make a formal report. Defendant GREEN simply laughed at

6

his response.  Defendant MOLCZAN was present when the comment was made but did not reprimand Defendant GREEN for the comment.

34.     On or around June 29, 2020, PLAINTIFF complained to Defendant THORNTON of Defendant GREEN's conduct and racist comments toward African American employees, and Defendant MOLCZAN's failure to investigate his complaints. PLAINTIFF also stated that he was reluctant to make a formal complaint because he feared that Defendant PCS would retaliate against him for same.   Defendant THORNTON told PLAINTIFF take some time to think about if he wanted to make a formal complaint and to follow up with her.

35.     On or around July 1, 2020, Defendant PCS was audited. Two Caucasian nurses had called out of work without proper notice in direct violation of Defendant's attendance policy. Upon learning that the nurses were absent, PLAINTIFF immediately informed Defendant MOLCZAN of same.

36.     On or around July 3, 2020, PLAINTIFF and Defendant MOLCZAN met for a Quarterly meeting.  During quarterly meeting, CHARGINGPARTY again informed Defendant MOLCZAN of the two nurses' attendance violations.  Defendant MOLCZAN asked PLAINTIFF why he was so focused on the nurses. PLAINTIFF explained that both nurses had violated Defendant PCS' attendance policy and had yet to be reprimanded.

37.     PLAINTIFF also complained to Defendant MOLCZAN that African American employees were disproportionately reprimanded and given write ups for attendance violations. Further, PLAINTIFF stated to Defendant MOLCZAN had not taken any action to address or remedy complaints against Defendant GREEN.

38.     Defendant MOLCZAN concluded the meeting and told PLAINTIFF that he would follow up with PLAINTIFF the following day.

39.     The following day, Defendant MOLCZAN called PLAINTIFF to further discuss the complaints raised at the quarterly meeting. PLAINTIFF informed Defendant MOLCZAN that he had statements from employees, and other documentation to back up the complaints.

40.     Defendant MOLCZAN simply replied that PLAINTIFF'S complaints were "anecdotal," and that the staff had provided him with a narrative that was false. PLAINTIFF told Defendant MOLCZAN that he had informed Defendant THORNTON of his complaints and would follow up with her.

41.     On or about July 6, 2020, PLAINTIFF complained to Defendant THORNTON, Defendant BIA, and Defendant HASSE of Defendant GREEN's offensive conduct and racist comment on June 29, 2020, and Defendant MOLCZAN's knowledge of complaints and failure to take any action to remedy the complaints.  Defendant THORNTON asked that PLAINTIFF write out his complaints and stated that she would conduct an investigation.

42.     On or around July 7, 2020, PLAINTIFF emailed Defendants THORTON, BIA, and HASSE his complaints of race and color discrimination and disparate treatment.

43.     Despite PLAINTIFF raising such complaints to Defendants THORTON, BIA, and HASSE, Defendant PCS took no remedial actions.

44.     On July 7, 2020, PLAINTIFF was informed that an employee, whom he was in contact with a few days prior, tested positive for COVID-19.

45.     On or around July 8, 2020, PLAINTIFF got tested for COVID-19.

46.     PLAINTIFF immediately informed Defendant THORNTON of same and that he would quarantine for two (2) weeks, as he awaited his results.

47.     Defendant THORNTON advised PLAINTIFF to apply for FMLA.

48.     PLAINTIFF applied and was approved for FMLA beginning July 7, 2020, until August 7, 2020.

49.     On August 3, 2020, Defendant informed PLAINTIFF that his employment was terminated for alleged "lack of communication" while on FMLA.

50.     Defendants' reasoning for PLAINTIFF'S termination is pretextual.

51.     Defendant PSC fired PLAINTIFF due to his race and/or color and/or in retaliation for his complaints of race and/or color discrimination and harassment, and or for exercising his rights under FMLA.

52.     In terminating CHARGING PARTY, Defendants violated the Families First Coronavirus Response Act (FFCRA), which provides employees two (2) weeks of paid sick leave at the employee's regular rate of pay where the employee is unable to work because the employee is quarantined.

53.     As a result of Defendants' actions, PLAINTIFF felt extremely humiliated, degraded, victimized, embarrassed and emotionally distressed.

54.     As a result of the acts and conduct complained of herein, PLAINTIFF has suffered and will continue to suffer the loss of income, the loss of salary, bonuses, benefits and other compensation which such employment entails, and PLAINTIFF also suffered future pecuniary losses, emotional pain, humiliation, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses. PLAINTIFF has further experienced severe emotional and physical distress.

55.     That as a result of Defendants' conduct, the PLAINTIFF was caused to sustain serious and permanent personal injuries, including but not limited to permanent psychological injuries.

56.     As Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, PLAINTIFF demands Punitive Damages against all the Defendants jointly and severally.

57.     PLAINTIFF further claims aggravation, activation and/or exacerbation of any preexisting condition.

58.     PLAINTIFF claims that Defendants unlawfully discriminated against PLAINTIFF because of his race, national origin, and because he complained of an opposed the unlawful conduct of Defendants related to the above protected class.

59.     PLAINTIFF further claims constructive and/or actual discharge to the extent PLAINTIFF is terminated from PLAINTIFF's position as a result of the unlawful discrimination and retaliation.

60.     The above are just some examples, of some of the discrimination and retaliation to which Defendants subjected PLAINTIFF to on a continuous and on-going basis throughout PLAINTIFF's employment.

61.     The Defendants have exhibited a pattern and practice of not only discrimination but also retaliation.

62.     PLAINTIFF claims alternatively that PLAINTIFF is an Independent Contractor, and PLAINTIFF makes all applicable claims for the above conduct and facts under the applicable law pertaining to Independent Contractors. Furthermore, in such case, PLAINTIFF claims that Defendant owed and breached its duty to PLAINTIFF to prevent the harassment, discrimination, and retaliation and is liable therefore for negligence.

63.     PLAINTIFF claims a continuous practice of discrimination and claims a continuing violation and makes all claims herein under the continuing violations doctrine.

## COUNT I
## UNDER FEDERAL LAW
## S.C. SECTION 1981
### (against all named Defendants)

64.     PLAINTIFF hereby incorporates by reference each and every allegation made in the above paragraphs of this complaint.

65.     42 USC Section 1981 states in relevant part as follows:

(a) Statement of equal rights All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other. (b) "Make and enforce contracts" defined for purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship. 42 U.S.C.A. § 1981.

66.     PLAINTIFF was discriminated against by Defendants because of his race as provided under 42 USC Section 1981 and has suffered damages as set forth herein.

67.     PLAINTIFF claims unlawful retaliation under 42 U.S.C. 1981 due to Defendant's termination of his employment due to his race and/or national origin.

68.     PLAINTIFF also claims unlawful retaliation under 42 U.S.C. 1981 for his opposition to Defendants' unlawful employment practices.

**COUNT II**
**DISCRIMINATION UNDER TITLE VII**
**HOSTILE WORK ENVIRONMENT AND DISPARATE TREATMENT**
**(against corporate Defendants only)**

69.     PLAINTIFF hereby incorporates by reference each and every allegation made in the above paragraphs of this complaint.

70.     This claim is authorized and instituted pursuant to the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section(s) 2000e et seq., as amended, for relief based upon the unlawful employment practices of the above-named Defendants. PLAINTIFF complains of Defendants' violation of Title VII's prohibition against discrimination in employment based, in whole or in part, upon an employee's race.

71.     SEC. 2000e-2. *[Section 703]* states as follows:

(a) Employer practices
It shall be an unlawful employment practice for an employer -
(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or
(2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

72.     Defendants engaged in unlawful employment practices prohibited by 42 U.S.C. §2000e et seq., by discriminating against PLAINTIFF because of his race and/or national origin.

73.     The discrimination and harassment described above and incorporated into Count IV was severe and pervasive and created a hostile work environment for PLAINTIFF.

74.     Defendants subjected PLAINTIFF to discrimination and harassment due to PLAINTIFF'S race and/or national origin.

75.     Defendants subjected PLAINTIFF to discrimination and harassment by unlawfully terminating his employment due to his race and/or national origin.

76.     PLAINTIFF hereby makes a claim against Defendants under all of the applicable paragraphs of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section(s) 2000e et seq., as amended.

## COUNT III
## RETALIATION UNDER TITLE VII
### (against corporate Defendants only)

77.     PLAINTIFF hereby incorporates by reference each and every allegation made in the above paragraphs of this complaint.

78.     Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-3(a) provides that it shall be an unlawful employment practice for an employer: "(1) to…discriminate against any of his employees…because [s]he has opposed any practice made an unlawful employment practice by this subchapter, or because [s]he has made a charge, testified, assisted, or participated in any matter in an investigation, proceeding, or hearing under this subchapter."

79.     Defendants engaged in unlawful employment practices prohibited by 42 U.S.C. § 2000e *et seq.* by retaliating against PLAINTIFF with respect to the terms, conditions, and/or privileges, of his employment, and/or for wrongfully terminating his employment due to his race and/or national origin, and because of his opposition to and reporting of the unlawful employment practices of Defendants.

## COUNT IV
## VIOLATIONS OF THE
## FAMILY AND MEDICAL LEAVE ACT, 29 U.S.C. §§ 2601 et seq.("FMLA")

80.     PLAINTIFF hereby incorporates by reference each and every allegation made in the above paragraphs of this complaint.

81.     The FMLA provides eligible employees of covered employers with up to 12 workweeks of unpaid, job protected leave in a 12-month period for, *inter alia*, a serious health condition that makes the employee unable to perform the essential functions of his job. 29 U.S.C. §§ 2601 et seq.

82.     A covered employer must provide FMLA benefits and protections to eligible employees and comply with other responsibilities under the FMLA and its regulations at 29 C.F.R. part 825.

83.     At all relevant times, PLAINTIFF was an eligible employee of a covered employer with a qualifying medical condition entitling him to the protections of the FMLA.

84.     Defendant violated the FMLA by interfering with, restraining and/or denying PLAINTIFF'S rights under the FMLA by, *inter alia*:

    a.     Failing to comply with the general notice requirements under the FMLA;

    b.     Failing to comply with the eligibility notice requirements under the FMLA;

    c.     Failing to comply with the rights and responsibilities notice requirements under the FMLA;

    d.     Failing to comply with the designation notice requirements under the FMLA;

    e.     Failing to provide notice of a fitness-for-duty certification with the designation notice as required by the FMLA;

    f.     Failing to continue to contribute to PLAINTIFF'S health benefits while he was placed on involuntary medical leave;

g.     Discharging and/or constructively discharging, suspending and/or disciplining PLAINTIFF notwithstanding that PLAINTIFF was fit to perform his duties and return to work at the end of his FMLA leave;

h.     Retaliating against PLAINTIFF for asking for attempting to exercise his rights under the FMLA;

i.     Failing to provide PLAINTIFF with the proper FMLA forms and/or medical certifications;

j.     Failing to supervise and/or train its employees and supervisors on compliance with the provisions of the FMLA;

k.     Failing to have in place proper FMLA policies, procedures and compliance; and/or

l.     Otherwise violating the FMLA.

85.     Defendant's violations of the FMLA were grossly negligent and/or willful.

86.     As a direct and proximate cause of Defendant's willful violations of the FMLA, Defendant is liable for PLAINTIFF'S compensation and benefits lost by reason of the violations, for other actual monetary losses sustained as a direct result of their violation, and for appropriate equitable or other relief tailored to the harm suffered by PLAINTIFF. See 29 CFR 825.300 (e).

**COUNT V**
**RETALIATION**
**FAMILY AND MEDICAL LEAVE ACT, 29 U.S.C. §§ 2601 et seq. ("FMLA")**

87.     PLAINTIFF hereby incorporates by reference each and every allegation made in the above paragraphs of this complaint.

88.     PLAINTIFF was an eligible employee under the definitional terms of the FMLA.

89.     PLAINTIFF requested FMLA leave due to exposure to COVID-19.

15

90.     Defendant retaliated against PLAINTIFF for requesting and taking FMLA leave by disciplinary actions taken against him.

91.     Defendant's violations of the FMLA were grossly negligent and/or willful.

92.     As a direct and proximate cause of Defendant's willful violations of the FMLA, Defendant is liable for PLAINTIFF'S compensation and benefits lost by reason of the violations, for other actual monetary losses sustained as a direct result of their violation, and for appropriate equitable or other relief tailored to the harm suffered by PLAINTIFF. See 29 CFR 825.300 (e).

**COUNT VI**
**VIOLATIONS OF THE**
**FAMILIES FIRST CORONAVIRUS RESPONSE ACT ("FFCRA")**

93.     PLAINTIFF hereby incorporates by reference each and every allegation made in the above paragraphs of this complaint.

94.     The FFCRA is an amendment to the FMLA.

95.     The FFCRA provides eligible employees of covered employers with:

a)     Two weeks (up to 80 hours) of paid sick leave at the employee's regular rate of pay where the employee is unable to work because the employee is quarantined (pursuant to Federal, State, or local government order or advice of a health care provider), and/or experiencing COVID-19 symptoms and seeking a medical diagnosis; or

b)     Two weeks (up to 80 hours) of paid sick leave at two-thirds the employee's regular rate of pay because the employee is unable to work because of a bona fide need to care for an individual subject to quarantine (pursuant to Federal, State, or local government order or advice of a health care provider), or care for a child (under 18 years of age) whose school or child care provider is closed or unavailable for reasons related to COVID-19, and/or the employee is experiencing a substantially similar condition as specified by the

Secretary of Health and Human Services, in consultation with the Secretaries of the Treasury and Labor.

96.     A covered employer must provide to employees that it has employed for at least 30 days up to an additional 10 weeks of paid expanded family and medical leave at two-thirds the employee's regular rate of pay where an employee is unable to work due to a bona fide need for leave to care for a child whose school or child care provider is closed or unavailable for reasons related to COVID-19.

97.     For covered employers the paid sick leave and expanded family and medical leave provisions of the FFCRA apply to certain public employers, and private employers with fewer than 500 employees.[4] Most employees of the federal government are covered by Title II of the Family and Medical Leave Act, which was not amended by this Act, and are therefore not covered by the expanded family and medical leave provisions of the FFCRA. However, federal employees covered by Title II of the Family and Medical Leave Act are covered by the paid sick leave provision.  Small businesses with fewer than 50 employees may qualify for exemption from the requirement to provide leave due to school closings or child care unavailability if the leave requirements would jeopardize the viability of the business as a going concern.

98.     A covered employer must provide FMLA benefits and protections to eligible employees and comply with other responsibilities under the FMLA and its regulations at 29 C.F.R. part 825.

99.     At all relevant times, PLAINTIFF was an eligible employee of a covered employer with a qualifying reason for leave entitling him to the protections of the FFCRA.

100.     Under the FFCRA, an employee qualifies for paid sick time if the employee is unable to work (or unable to telework) due to a need for leave because the employee:

c) is subject to a Federal, State, or local quarantine or isolation order related to COVID-19;

d) has been advised by a health care provider to self-quarantine related to COVID-19;

e) is experiencing COVID-19 symptoms and is seeking a medical diagnosis;

f) is caring for an individual subject to an order described in (a) or self-quarantine as described in (b);

g) is caring for a child whose school or place of care is closed (or child care provider is unavailable) for reasons related to COVID-19; or

h) is experiencing any other substantially-similar condition specified by the Secretary of Health and Human Services, in consultation with the Secretaries of Labor and Treasury.

101. Defendant violated the FFRCA by interfering with, restraining and/or denying PLAINTIFF'S rights under the FFRCA by, *inter alia*:

m. Failing to comply with the general notice requirements under the FFCRA;

n. Failing to comply with the eligibility notice requirements under the FFCRA;

o. Failing to comply with the rights and responsibilities notice requirements under the FFCRA;

p. Failing to comply with the designation notice requirements under the FFCRA;

q. Discharging and/or constructively discharging, suspending and/or disciplining PLAINTIFF notwithstanding that PLAINTIFF was fit to perform his duties and return to work at the end of his FFCRA leave;

r.      Retaliating against PLAINTIFF for asking for attempting to exercise his rights under the FFCRA;

s.      Failing to have in place proper FFCRA policies, procedures and compliance; and/or

t.      Otherwise violating the FFCRA.

102.    Defendant's violations of the FFCRA were grossly negligent and/or willful.

103.    As a direct and proximate cause of Defendant's willful violations of the FFCRA, Defendant is liable for PLAINTIFF'S compensation and benefits lost by reason of the violations, for other actual monetary losses sustained as a direct result of their violation, and for appropriate equitable or other relief tailored to the harm suffered by PLAINTIFF.  See §§ 16 and 17 of the Fair Labor Standards Act. 29 U.S.C. 216; 217.

**COUNT VII**
**RETALIATION**
**FAMILIES FIRST CORONAVIRUS RESPONSE ACT ("FFCRA")**

104.    PLAINTIFF hereby incorporates by reference each and every allegation made in the above paragraphs of this complaint.

105.    PLAINTIFF was an eligible employee under the definitional terms of the FFCRA.

106.    PLAINTIFF requested FFCRA leave because of his qualifying reason for leave.

107.    Defendant retaliated against PLAINTIFF for requesting and taking FFCRA leave by disciplinary actions taken against him.

108.    Defendant's violations of the FFCRA were grossly negligent and/or willful.

109.    As a direct and proximate cause of Defendant's willful violations of the FFCRA, Defendant is liable for PLAINTIFF'S compensation and benefits lost by reason of the violations, for other actual monetary losses sustained as a direct result of their violation, and for appropriate

equitable or other relief tailored to the harm suffered by PLAINTIFF. See §§ 16 and 17 of the Fair Labor Standards Act. 29 U.S.C. 216; 217.

**COUNT VII**
**DISCRIMINATION UNDER STATE LAW**
**HOSTILE WORK ENVIRONEMENT AND DISPARATE TREATMENT**
(against corporate Defendants only)
(PLAINTIFF will seek leave to amend this complaint to assert his PHRA claims)

110.     PLAINTIFF hereby incorporates by reference each and every allegation made in the above paragraphs of this complaint.

111.     PLAINTIFF'S PHRA claims are still pending before the PHRC because less than one year has elapsed since PHRC assumed jurisdiction over PLAINTIFF'S Charge.

112.     PLAINTIFF will seek leave to amend this complaint to assert his PHRA claims against the parties referenced in ¶ 26 above. See Federal R. Civ. P. 159a) (Courts "freely give leave to amend when justice so requires"), 15(c) (Amendments "relate back" to the date of the original pleading), and 15(d) (Plaintiff may "serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented").

113.     The PHRA § 955 provides that it shall be an unlawful discriminatory practice: "(a) For any employer because of the race, color, religious creed, ancestry, age, sex, national origin or non-job related handicap or disability or the use of a guide or support animal because of the blindness, deafness or physical handicap of any individual or independent contractor, to refuse to hire or employ or contract with, or to bar or to discharge from employment such individual or independent contractor, or to otherwise discriminate against such individual or independent contractor with respect to compensation, hire, tenure, terms, conditions or privileges of employment or contract, if the individual or independent contractor is the best able and most competent to perform the services required."

20

114.    Defendants engaged in an unlawful discriminatory practice by discriminating against the PLAINTIFF because of PLAINTIFF'S race and/or national origin.

115.    The discrimination and harassment described above and incorporated into this Count was severe and pervasive and created a hostile work environment for PLAINTIFF.

116.    Defendants subjected PLAINTIFF to discrimination and harassment due to PLAINTIFF'S race and/or national origin.

117.    Defendants engaged in an unlawful discriminatory practice by unlawfully terminating PLAINTIFF because of PLAINTIFF'S race and/or national origin.

118.    PLAINTIFF hereby makes a claim against Defendants under all of the applicable paragraphs of the PHRA § 955.

**COUNT VIII**
**RETALIATION UNDER STATE LAW - RETALIATION**
**(against all Defendants)**
**(PLAINTIFF will seek leave to amend this complaint to assert his PHRA claims)**

119.    PLAINTIFF hereby incorporates by reference each and every allegation made in the above paragraphs of this complaint.

120.    PLAINTIFF'S PHRA claims are still pending before the PHRC because less than one year has elapsed since PHRC assumed jurisdiction over PLAINTIFF'S Charge.

121.    PLAINTIFF will seek leave to amend this complaint to assert his PHRA claims against the parties referenced in ¶ 26 above. See Federal R. Civ. P. 159a) (Courts "freely give leave to amend when justice so requires"), 15(c) (Amendments "relate back" to the date of the original pleading), and 15(d) (Plaintiff may "serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented").

122.    PHRA § 955(d) provides that it shall be an unlawful discriminatory practice: " For any person, employer, employment agency or labor organization to discriminate in any manner

against any individual because such individual has opposed any practice forbidden by this act, or because such individual has made a charge, testified or assisted, in any manner, in any investigation, proceeding or hearing under this act."

123.    Defendants engaged in an unlawful discriminatory practice by discharging, retaliating, and otherwise discriminating against the PLAINTIFF because of PLAINTIFF'S opposition to the unlawful employment practices of PLAINTIFF'S employer.

124.    PLAINTIFF reported and opposed the discrimination and harassment and the abusive and hostile work environment was ratcheted up.  PLAINTIFF was subjected to discipline which includes but is not limited to his termination of employment.

**COUNT IX**
**DISCRIMINATION UNDER STATE LAW – AIDING AND ABETTING…**
**(against individually named Defendants only)**
**(PLAINTIFF will seek leave to amend this complaint to assert his PHRA claims)**

125.    PLAINTIFF hereby incorporates by reference each and every allegation made in the above paragraphs of this complaint.

126.    PLAINTIFF'S PHRA claims are still pending before the PHRC because less than one year has elapsed since PHRC assumed jurisdiction over PLAINTIFF'S Charge.

127.    PLAINTIFF will seek leave to amend this complaint to assert his PHRA claims against the parties referenced in ¶ 26 above. See Federal R. Civ. P. 159a) (Courts "freely give leave to amend when justice so requires"), 15(c) (Amendments "relate back" to the date of the original pleading), and 15(d) (Plaintiff may "serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented").

128.    PHRA § 955(e) provides that it shall be an unlawful discriminatory practice: " For any person, employer, employment agency, labor organization or employee, to aid, abet, incite,

compel or coerce the doing of any act declared by this section to be an unlawful discriminatory practice, or to obstruct or prevent any person from complying with the provisions of this act or any order issued thereunder, or to attempt, directly or indirectly, to commit any act declared by this section to be an unlawful discriminatory practice."

129.     Defendants engaged in an unlawful discriminatory practice in violation of PHRA §955(e) by committing assault and battery, aiding, abetting, inciting, compelling and coercing the discriminatory conduct.

130.     The individually named Defendants took active part by aiding, abetting, compelling, and inciting the discrimination and harassment described in detail above.

131.     Any individuals who may not have had direct supervisory authority over PLAINTIFF are still subject to individual liability under this section as they actively took unlawful action against PLAINTIFF pursuant to the direction, instruction, and sanctioning of individuals with direct supervisory authority over PLAINTIFF.

132.     Individuals without supervisory authority act with supervisory authority when they carry out unlawful discriminatory conduct at the direction and with the express authorization of individuals with supervisory authority.


**COUNT X**
**DISCRIMINATION UNDER**
**PHILADELPHIA CITY ADMINISTRATIVE ORDINANCE**
**(against all named Defendants)**

134.     PLAINTIFF hereby incorporates by reference each and every allegation made in the above paragraphs of this complaint.

135.     The Philadelphia Fair Practices Ordinance § 9-1103(1) provides that "It shall bean unlawful discriminatory practice: "It shall be an unlawful employment practice to deny or interfere

with the employment opportunities of an individual based upon his or her race, ethnicity, color, sex (including pregnancy, childbirth, or a related medical condition), sexual orientation, gender identity, religion, national origin, ancestry, age, disability, marital status, familial status, genetic information, or domestic or sexual violence victim status, including, but not limited to, the following: (a) For any employer to refuse to hire, discharge, or otherwise discriminate against any individual, with respect to tenure, promotions, terms, conditions or privileges of employment or with respect to any matter directly or indirectly related to employment."

136.    Defendants engaged in an unlawful discriminatory practice in violation of Philadelphia Fair Practices Ordinance § 9-1103(1) by creating and maintaining discriminatory working conditions, and otherwise discriminating against PLAINTIFF because of PLAINTIFF'S race.

137.    PLAINTIFF hereby makes a claim against Defendants under all of the applicable paragraphs of Philadelphia Fair Practices Ordinance Chapter 9-1100.   PLAINTIFF claims violations of the Philadelphia Fair Practice Ordnance due to Defendants' discrimination against PLAINTIFF'S race.

**COUNT XI**
**RETALIATION UNDER THE**
**PHILADELPHIA CITY ADMINISTRATIVE ORDINANCE**
**(against all named Defendants)**

138.    PLAINTIFF hereby incorporates all allegations contained in the above paragraphs as fully as if they were set forth at length.

139.    The Philadelphia Fair Practices Ordinance § 9-1103(1)(g) provides that it shall be unlawful discriminatory practice: " For any person to harass, threaten, harm, damage, or otherwise penalize, retaliate or discriminate in any manner against any person because he, she or it has

complied with the provisions of this Chapter, exercised his, her or its rights under this Chapter, enjoyed the benefits of this Chapter, or made a charge, testified or assisted in any manner in any investigation, proceeding or hearing hereunder."

140.     Defendants engaged in an unlawful discriminatory practice in violation of Philadelphia Fair Practices Ordinance § 9-1103(1)(g) by discriminating against the PLAINTIFF because of PLAINTIFF'S opposition to the unlawful employment practices of PLAINTIFF'S employer.

**COUNT XII**
**DISCRIMINATION UNDER**
**PHILADELPHIA CITY ADMINISTRATIVE ORDINANCE – AIDING AND ABETTING**
**(against individual Defendants only and not against corporate Defendants)**

141.     PLAINTIFF hereby incorporates all allegations contained in the above paragraphs as fully as if they were set forth at length.

142.     The Philadelphia Fair Practices Ordinance § 9-1103(1)(h) provides that it shall be unlawful discriminatory practice: "For any person to aid, abet, incite, induce, compel or coerce the doing of any unlawful employment practice or to obstruct or prevent any person from complying with the provisions of this Section or any order issued hereunder or to attempt directly or indirectly to commit any act declared by this Section to be an unlawful employment practice."

143.     Defendants engaged in an unlawful discriminatory practice in violation of Philadelphia Fair Practices Ordinance § 9-1103(1)(h) by aiding, abetting, inciting, compelling and coercing the above discriminatory, unlawful and retaliatory conduct.  The individual Defendants aided and abetting the campaign of discrimination, harassment and retaliation against PLAINTIFF due to PLAINTIFF'S race, and in retaliation for PLAINTIFF opposing said discrimination and harassment in the workplace.

25

## JURY DEMAND

PLAINTIFF requests a jury trial on all issues to be tried.

## PRAYER FOR RELIEF

**WHEREFORE**, PLAINTIFF demands judgment against Defendants, jointly and severally, in an amount to be determined at the time of trial plus interest, punitive damages, liquidated damages, statutory damaged, attorney's fees, costs, and disbursement of action; and for such other relief as the Court deems just and proper.

**DEREK SMITH LAW GROUP, PLLC**


By:       /s/Tova Rabin_____
          Tova Rabin, Esquire
          1835 Market Street, Suite 2950
          Philadelphia, Pennsylvania 19103
          Phone: 215.391.4790
          Email: tova@dereksmithlaw.com

DATED: August 31, 2021